UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
 :
UNITED STATES OF AMERICA, :
 :   S1 12 Cr. 581 (PKC)
           -v- :
 :
SAMUEL ASHKENAZI, :
  a/k/a "Haim Veinberg," :
  a/k/a "Joseph," :
  a/k/a "Sam," :
SAMUEL BLAU, and :
SAMUEL GOLDBERGER, :
  a/k/a "Benzi," :
 :
           Defendants. :
 :
------------------------------------------------------------------------X

# GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR A BILL OF PARTICULARS

PREET BHARARA
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Rachel Maimin
Rahul Mukhi
Assistant United States Attorneys
- Of Counsel -

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum of law in opposition to the motion of defendants Samuel Goldberger, a/k/a "Benzi" ("Goldberger") and Samuel Blau ("Blau") for a bill of particulars (the "Motion").[1]  For the reasons that follow, a bill of particulars is unwarranted under the applicable legal standard.  The Motion should be denied in its entirety.

## I.  Factual Background

Defendants Blau and Goldberger, as well as defendant Samuel Ashkenazi ("Ashkenazi"), are charged in Count One of the S1 Indictment (the "Indictment") with conspiring to launder narcotics proceeds, in violation of Title 18, United States Code, Section 1956(h), and, in Count Two, of conspiring to violate the Travel Act, in violation of Title 18, United States Code, Section 371.  Trial is scheduled to begin on March 4, 2013.

The Government expects that the evidence at trial will show that, between in or about December 2011 and in or about April 2012, the defendants were participants in a criminal conspiracy based in Israel, Mexico, and the United States that laundered and distributed over $1,000,000 in narcotics proceeds on behalf of Latin American narcotics distributors (the "Organization").  During the course of this conspiracy, Ashkenazi coordinated the pickups and transportation of bulk cash arising from narcotics sales.  Ashkenazi and Blau also personally

---

[1]  Goldberger submitted a memorandum in support of his request for a bill of particulars on December 14, 2012, and Blau joined in that request by letter dated December 19, 2012.  The defendants also moved, simultaneously, for the Court to direct the Government to produce all outstanding discovery, including certain categories of discovery Goldberger enumerated (the "Requested Discovery"), by January 7, 2013.  This discovery motion is moot.  The Government has complied with the Court's Order, dated December 14, 2012, to produce the outstanding discovery in its possession by January 10, 2013.  The Government has also produced the Requested Discovery.

transported bulk cash themselves. The cash was laundered through the "Money Spot," a check cashing business in Brooklyn, New York, owned and operated by defendant Samuel Goldberger.

The Government currently expects that the evidence at trial will show that the Organization's methods used to launder the narcotics proceeds included, among other things: (i) Ashkenazi's delivering narcotics proceeds to Goldberger, who mixed the narcotics proceeds with the Money Spot's cash-on-hand; (ii) Goldberger's providing third-party checks to Ashkenazi in exchange for bulk cash derived from narcotics trafficking; and/or (iii) Goldberger's providing Ashkenazi with larger denomination bills from the Money Spot's cash-on-hand in exchange for narcotics proceeds in smaller denominations, *e.g.,* providing $100 bills for $20 bills.

As also set forth in the Government's motion *in limine* to admit other acts evidence pursuant to Rule 404(b) of the Rules of Criminal Procedure, dated January 11, 2013, in addition to narcotics proceeds, Ashkenazi and Goldberger also used the Money Spot to launder proceeds of health care fraud, which is the subject of a pending case before the Honorable Paul A. Crotty, in which both Ashkenazi and Goldberger are charged. Likewise, Ashkenazi and Goldberger also laundered unlawful proceeds generated through the diversion of prescription pills. This conduct is the subject of a pending case in the District of Puerto Rico in which Ashkenazi is charged, and in which the Government has learned that Goldberger is an unindicted co-conspirator. Further, Ashkenazi's and Goldberger's commission of similar diversion conduct is also the subject of an ongoing investigation in this District.

The Government has, to date, produced over 150,000 pages of material to the defendants in discovery,[2] including, among other things:

- Ten affidavits in support of law enforcement's applications for wiretaps, each of which provides detailed descriptions of the Government's ongoing investigation and the role of the defendants in the Organization, with reference to specific seizures of cash and/or narcotics, surveillances of the defendants engaged in acts in furtherance of the charged scheme, and facts relevant to the defendants' criminal conduct;

- Eight affidavits in support of law enforcement's applications for GPS tracking devices, on both phones and a vehicle, which also provide detailed descriptions of the defendants' roles in the Organization, with reference to specific surveillances of the defendants engaged in acts in furtherance of the charged scheme, seizures of cash and/or narcotics, and telephone calls in furtherance of the conspiracy;

- Ten reports prepared by the Drug Enforcement Administration (the "DEA") detailing surveillances of the defendants engaged in furtherance of the charged scheme and/or statements made by the defendants to law enforcement as well as reports prepared by the Federal Bureau of Investigation ("FBI") and other agencies;

- Twenty-two evidence vouchers listing evidence – such as cash or narcotics - seized from the defendants or unindicted coconspirators during the course of the investigation and/or pursuant to arrest;

- Fourteen discs containing telephone calls and text messages among the defendants and unindicted conspirators intercepted pursuant to wiretaps – including numerous telephone calls in furtherance of the charged scheme – as well as "linesheets" containing law enforcement's preliminary summaries of those calls;[3]

---

[2] Certain of this material was produced to Ashkenazi and Goldberger in connection with the case pending before Judge Crotty. As Goldberger notes in the Motion, the prosecution teams on the instant case and the case pending before Judge Crotty have been coordinating discovery in order to minimize Goldberger's and Ashkenazi's receipt of duplicative discovery. The Government advised Blau of this discovery and offered to make it available to him.

[3] The Government is also in the process of identifying which of these calls the Government expects to offer at trial. The Government expects to notify the defendants of these calls on a rolling basis as the Government makes its determinations.

- Copies of all documents and computers seized pursuant to search warrant;

- All video footage recorded by a pole camera at the Money Spot;[4]

- All GPS location data collected by law enforcement during the course of the investigation;

- All CTRs in the Government's possession filed by the (i) Money Spot; (ii) Dependable," which is another check casher related to this investigation; and (iii) Ashkenazi;

- Bank records related to, among other things, (i) Dependable; (ii) an account maintained by Samuel Ashkenazi in the name of one of his aliases, "Haim Veinberg;"; (iii) shell companies used by the Organization; and (iv) the Money Spot;

- Documents maintained by Federal Express concerning shipments at issue in the case;

- Documents maintained by the New York State Bank Examiners concerning, among other things, Samuel Goldberger and the Money Spot, including audits, annual reports, and analyses of bank records;

- The contents of a cellular telephone seized pursuant to Goldberger's arrest;

- A list of CTRs filed by Goldberger and/or the Money Spot that contain false reports, material omissions and/or misstatements of fact;

- Credit reports for Goldberger and Ashenazi; and

- Incorporation documents for shell companies used by the Organization.

Further, in order to make review of this voluminous discovery more efficient and convenient for the defendants, the Government produced the material electronically and (i) labeled the documents and/or folders in order to indicate the contents; and/or (ii) notified

---

[4] Because the pole camera footage was extremely voluminous, the Government asked the defendants to supply a hard drive on which the Government would copy the material. Goldberger was the only defendant who supplied such a hard drive.

counsel of content of the material contained in particular bates ranges.  In addition, in response to a letter from Goldberger on November 12, 2012 requesting, among other things, additional discovery, the Government pointed Goldberger to particular bates ranges where certain of that material had already been produced.

Finally, although the Government was not required to allege any overt acts until the recent Superseding Indictment - which added a violation of 18 U.S.C. § 371 - the Government specified a number of overt acts at the outset of this case in the underlying Indictment detailing specific steps that the defendants and their unindicted coconspirators took in furtherance of the charged conspiracies, namely, that: (a) on or about January 8, 2012 and January 9, 2012, Ashkenazi picked up approximately $10,000 in bulk cash in Boston, Massachusetts, in a transaction arranged by two unindicted co-conspirators ("CC-1" and "CC-2") and delivered the cash to Goldberger at the Money Spot; (b) on or about January 24, 2012, law enforcement stopped another transaction between CC-3, CC-4, and Ashkenazi in Hartford, Connecticut, and seized approximately $390,000 in bulk cash and half a kilogram of cocaine; and (c) on or about March 2, 2012, Ashkenazi and Blau arranged for the pickup of approximately $300,000 in bulk cash at an apartment in New York, New York.[5]

---

[5]   The Indictment further specifies that, on or about January 23, 2012 and January 24, 2012, Ashkenazi picked up approximately $400,000 in bulk cash from two unindicted co-conspirators ("CC-3" and "CC-4") in Hartford, Connecticut, in a transaction arranged by CC-1 and CC-2, and delivered the cash to Goldberger at the Money Spot. (Indictment ¶ 4(b).)  Law enforcement is continuing to investigate the precise circumstances of this conduct, and will promptly provide any new information regarding this conduct to the defendants.

In the Motion, the defendants seek, among other things, a list of each and every financial transaction the Government seeks to prove at trial, including the date, amount of money involved, participants, and corresponding narcotics transaction.

## II.     Applicable Law

"A bill of particulars is not a general investigative tool, a discovery device or a means to compel the government to disclose evidence or witnesses to be offered prior to trial." *United States* v. *D'Amico*, 734 F. Supp. 2d 321, 335 (S.D.N.Y. 2010) (McMahon, J.) (quoting *United States* v. *Gibson*, 175 F. Supp. 2d 532, 537 (S.D.N.Y. 2001)).  Accordingly, the sole legitimate purpose of a bill of particulars is to furnish facts that are necessary to apprise a defendant of the charges against him with sufficient precision to: (i) enable him to prepare his defense; (ii) avoid unfair surprise at trial; and (iii) preclude a second prosecution for the same offense.  *See Wong Tai* v. *United States*, 273 U.S. 77, 80-82 (1927); *United States* v. *Torres*, 901 F.2d 205, 234 (2d Cir. 1991); *United States* v. *Salazar*, 485 F.2d 1272, 1278 (2d Cir. 1973).  Indeed, "a bill of particulars should be required only where the charges of an indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States* v. *Torres*, 901 F.2d at 234.  Furthermore, "a bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means." *See United States* v. *Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (affirming denial of request for a bill of particulars where the Government adequately informed the defendant of the nature of the charges against him through discovery).

The ultimate test for whether a bill of particulars should be granted is not whether the information sought is merely helpful in preparing for trial, but whether it is *necessary* for the

limited notification purpose of a bill of particulars.  *See United States* v. *Leighton*, 265 F. Supp. 27, 35 (S.D.N.Y.), *aff'd*, 386 F.2d 822 (2d Cir. 1967); *United States* v. *Ramirez*, 602 F. Supp. 783, 793 (S.D.N.Y. 1985).

The law is equally clear about what a bill of particulars is not.  "Acquisition of evidentiary detail is not the function of the bill of particulars."  *Torres*, 901 F.2d at 234.  *See also United States* v. *Gottlieb*, 493 F.2d 987, 994 (2d Cir. 1974); *United States* v. *Lebron*, 222 F.2d 531, 535-36 (2d Cir. 1955).  Nor is it a general investigative tool for the defense.  *See United States* v. *D'Amico*, 734 F. Supp. 2d at 335; *Salazar*, 485 F.2d at 1278.  Further, a bill of particulars is not to be used as a vehicle to "compel disclosure of how much the Government can prove and how much it cannot, or to foreclose the Government from using proof it may develop as the trial approaches."  *United States* v. *Malinsky*, 19 F.R.D. 426, 428 (S.D.N.Y. 1956).  Nor is it a vehicle for forcing the Government to disclose its legal theory.  *See United States* v. *Shoher*, 555 F. Supp. 346, 349-51 (S.D.N.Y. 1983); *United States* v. *Coped*, 378 F. Supp. 99, 103 (S.D.N.Y. 1974).  Judge Crotty has explained that a bill of particulars is not a "discovery device"; rather:

> The standard for determining whether a bill of particulars is appropriate is based on necessity: "In deciding a motion for a bill of particulars, '[t]he important question is whether the information sought is necessary, not whether it is helpful.'" *United States* v. *Heredia*, No. 02 CR. 1246 (SWK), 2003 WL 21524008, at *9 (S.D.N.Y. July 3, 2003) (quoting *United States* v. *Facciolo*, 753 F.Supp. 449, 451 (S.D.N.Y. 1990)).  The purpose of a bill of particulars is to "supplement the allegations in the indictment when necessary to (1) enable the defendant to prepare his defense, (2) avoid unfair surprise to the defendant at trial, and (3) preclude a second prosecution of the same offense." *United States* v. *Sturtz*, 648 F. Supp. 817, 819-20 (S.D.N.Y. 1986).  A bill of particulars is appropriate "only where the charges of the indictment are so

> general that they do not advise the defendant of the specific acts of which he is accused." [*United States* v. *Torres*, 901 F.2d 205, 234 (2d Cir. 1990)]; *see also United States* v. *Wilson*, 493 F. Supp. 2d 364, 369 (E.D.N.Y. 2006) (quoting *United States* v. *Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)).

*United States* v. *Mandel*, 710 F. Supp. 2d 368, 384 (S.D.N.Y. 2010).

The rationale for this highly restricted use of a bill of particulars is simple. First, the Government is not required to provide information tantamount to an itemized preview of its proof because of the very real danger in criminal cases that the defendant will tailor his testimony to explain away the Government's predisclosed case. *United States* v. *Cimino*, 31 F.R.D. 277, 279 (S.D.N.Y. 1962), *aff'd*, 421 F.2d 509 (2d Cir. 1963). Second, detailed inquiries into the Government's case repeatedly have been rejected because they would unduly restrict the Government in presenting its proof at trial. *See, e.g.*, *United States* v. *Jimenez*, 824 F. Supp. at 363; *United States* v. *Goldman*, 439 F. Supp. 352 (S.D.N.Y. 1977).

### III.   The Defendants Are Not Entitled to a Bill of Particulars

The defendants' request for a bill of particulars in this case demonstrates a misapprehension about what is required under Rule 16, or more specifically, what establishes a need for a bill of particulars under Rule 7(f). As described above, the defendants seek, among other things, a list of each and every "financial transaction" the Government seeks to prove at trial, including the date, amount of money involved, participant, and corresponding narcotics transaction. Defendants are not entitled to any such information.

*First*, the defendants are charged in the Indictment with *conspiracies* to launder money and violate the Travel Act, *not* with substantive violations in connection with particular financial transactions. In this context, there is no plausible argument that the "transaction" information

8

sought by defendants is necessary to prepare for trial or is justified by some other proper reason. Rather, the Motion is actually seeking disclosure of evidentiary details and the Government's theory at trial, which is not the proper subject of a bill of particulars. *See, e.g.*, *United States* v. *Jamie*, No. 92 Cr. 194 (CSH), 1992 WL 188360, at *2 (S.D.N.Y. July 28, 1992) ("The Government has no obligation to 'preview its case or expose its legal theory,' . . . nor must it disclose the 'precise manner in which the crime charged in the indictment is alleged to have been committed.'") (citation omitted). This is particularly true where the Government has charged two related conspiracies taking place over a relatively brief period from December 2011 to April 2012. *See, e.g.*, *United States* v. *Muhammad*, No. 12–CR–337 (ADS), 2012 WL 5417044, 3 (E.D.N.Y. Nov. 5, 2012) ("Here, Count 1 of the Indictment alerts the defendant to the specific act of which he is accused—conspiracy to sell narcotics—and cites to the relevant statute. The indictment also includes the elements of the offense charged, the date, general location and nature of the crimes the defendant is alleged to have committed and the allegations against the defendant. Therefore, as there are no grounds on which to grant the defendant's motion for a bill of particulars . . . .").

*Second*, as set forth above, the Indictment and discovery produced thus far are more than sufficient to (i) enable the defendants to prepare their defense; (ii) avoid unfair surprise at trial; and (iii) preclude a second prosecution for the same offense. *See Wong Tai*, 273 U.S. at 80-82; *Torres*, 901 F.2d at 234. Although the defendants claim that they are "swim[ming] within [an] ocean of documents," (Motion at 8), the Government has produced discovery in a way that enables the defendants to review the material in a targeted fashion. Further, although not required to, the Government specified at the outset of this case – approximately five months ago

- a number of overt acts taken in furtherance of the charged money laundering conspiracy. The Government has also shown its willingness to identify particular documents to the defendants when requested.

Under these circumstances, the defendants' bill of particulars motion is simply an effort to obtain even more of a preview of the Government's trial evidence than the defendants have already received. In light of the discovery the defendant has received and the overt acts already specified, the defendants fail to actually articulate how and why a bill of particulars is required to permit them to prepare their defense to the charged conspiracies, to avoid surprise, and to defend against double jeopardy should the need arise. These are the only three needs that justify a request for a bill of particulars. Accordingly, the defendants' request for a bill of particulars should be denied.

### IV. Conclusion

For the reasons set forth above, Goldberger's and Blau's request for a bill of particulars should be denied.

Dated: New York, New York
January 15, 2013

Respectfully submitted,

PREET BHARARA
United States Attorney
for the Southern District of New York

By:  *[signature]*
Rachel Maimin/Rahul Mukhi
Assistant United States Attorney
Tel.: (212) 637-2460/1581
E-mail: Rachel.Maimin@usdoj.gov
           Rahul.Mukhi@usdoj.gov